Before we begin our regular proceedings, I'm going to turn it over to Judge Toronto, who has three motions. I have three admission motions, and if the prospective admittees can stand, I'd appreciate it. The movements, I guess, or I guess I'm the movement, but the prospective admittees are Allison Drury of the Bar of Maryland and the Bar of District of Columbia, Tom Derbysh of the Bar of New York, and Clark Oberamt of the Bar of Texas. They are my outgoing law clerks. So today my task is bittersweet, bitter because they're on the eve of abandoning me and leaving me wondering who these new people are in their offices to go and talk to, but sweet because I get to remember just how much they've meant to me over this year and how much help they've been as scholars and advisors and counsel and as friends with great good humor through many intense interactions. And for the formal part, maybe I can, I guess I will do them one at a time. It won't take long. I move the admission of Allison Berkson Drury, who is a member of the Bar and is in good standing with the highest courts of Maryland and the District of Columbia. I have knowledge of her credentials, and I am satisfied that she possesses the necessary qualifications. I also move the admission of Thomas Derbysh, who is a member of the Bar and is in good standing with the highest court of New York. I have knowledge of his credentials, and I am satisfied that he possesses the necessary qualifications. And finally, I move the admission of Clark Oberamt, who is a member of the Bar and is in good standing with the highest court of Texas. For him, too, I have knowledge of his credentials, and I am satisfied that he possesses the necessary qualifications. Well, I, too, have a little bit of knowledge about these individuals because Spencer and I spend a lot of time in Judge Galanto's chambers, so I'm delighted to grant the motions with Judge Chen's concurrence. I concur. Mr. Duran, do solemnly swear that you will comport yourself as an attorney and counselor of this court uprightly and according to law, and that you will support the Constitution of the United States of America. Congratulations. Thank you. Congratulations. The first case for argument this morning is 17-2051, Uniloc USA v. Amazon. Help me with your name, sir. Yes, Tim Groucho Osinski on behalf of the appellants. Welcome. Thank you. May it please the court. The district court erred in finding the claims of the 960 patent ineligible. With respect to step one of the Alice test, it is well established that a court must articulate what the claims are directed to with specificity so that that step one analysis is meaningful. The district court in this particular case failed to do that. The district court's abstraction was divorced from the actual language of the claims. The district court held that the abstract idea issue was a time-adjustable license. That's a financial instrument. The claims are not directed to a time-adjustable license. What the claims are directed to is a specific application and implementation of how to adjust the license over time and in response to specific conditions. In other words, they're not directed to a financial instrument itself, but rather specific applications and implementations. Now recently, this court in the Finjen case held that a claim was eligible where it recited specific steps that were aimed at achieving a desired result. I submit to this court that the 960 patent claims are a very similar situation. I would think, and I guess I don't have them firmly in my mind, but say starting with Alice, and I guess I would have guessed that many of our other cases about creating contractual relationships are not limited to the contract itself, but to various processes for creating them and adjusting them, like those shadow account processes or whatever they're called in Alice. Why isn't that what is going on here, which is maybe just a small linguistic difference from the language the district court used? When you look at those cases like Alice and a number of the other cases that are relied upon by the appellees, the focal point is on the financial instrument. In those cases, you have a financial instrument or other economic practice that's being claimed, and then it just says implement this via a generic computer. There's essentially two lines of cases where the target is the financial instrument itself implemented via a generic computer, in contrast to situations where you have specific application claim with concrete steps to achieve a desired result or improvements in computer functionality. The fact that an improvement in computer functionality may relate to some financial instrument or some other financial concept does not render it ineligible. If that were the case, then every single economic practice would never be entitled to patent protection, which as the Supreme Court held in Bilski is not true. Well, the improvement in computer functionality is a step two analysis and not a step one. So why don't you take us to the specificity in which the complaint described that this was really improvement in computer functionality. Certainly. With respect to step two, if you look at APPX 104 and 105, which is referencing the complaint, there are specific factual allegations as to why the patent is directed to eligible subject matter. And this complaint, which was made pre-Burkheimer, has specific factual allegations that must be at this level at the Rule 12B6 stage accepted as true. For example, it talks in paragraph 15 of the complaint on APPX 104 that as at the time of the invention, the technologies taught in the patent claims were innovative and novel. As evidence, for example, the breadth and volume of the reference is considered. And this goes on in 16 and 17. It gets into the actual claim language and talks about how those were meaningful elements, limitations that are explicitly tied to machines. It goes on in 18 and 19 and 20. And I would submit that we don't even have a duty. We could have no factual allegations in the complaint whatsoever directed to eligibility. That is not a necessary prerequisite for a patent claim to be eligible. As this court articulated very clearly in the Burkheimer decision, the burden is on the challenger, in this case the appellee, to come forward with evidence that meets a clear and convincing burden to establish that the claims are ineligible. And so let's assume that the complaint in our case was completely devoid of any factual allegation whatsoever. That does not matter. What matters is whether or not the challenger, in this case Amazon and the other appellees, comes forward with actual evidence to establish that the claims are ineligible under Step 2. There is no evidence whatsoever considered by the district court to establish that any element of the claims at issue were well understood, routine, or conventional. I guess I'm a little confused about the sort of procedural standards, right? This is a 12b-6. It is, your Honor. So evidence is never important on 12b-6. What's important under Twombly and Iqbal is whether there are facts that plausibly would establish meeting of the standards. So one has to look at the facts alleged with some quite important distinction between facts alleged and what is often called a conclusory allegation and see if there are facts that would allow you to succeed if you could prove those facts. Isn't that essentially what's missing in particular from the paragraphs 15 through 17? That those are conclusory and they don't identify facts about, let's call it, innovative computer developments. I respectfully disagree. I think that there are factual allegations contained in those paragraphs, and I also think that even a factual allegation that a claim as a whole is inventive, that is relevant to the inquiry. Because as the Supreme Court stated in Diamond versus Deere, part of the analysis under Step 2 and under the entire analysis requires that you look at the claims as a whole, not just each limitation and isolation. But what I submit is that the district court's finding wasn't based on a lack of factual allegation. The district court didn't even consider the factual allegations. Instead, what the district court did under Step 2 is it looked at each element in isolation. So first of all, it disregarded and at no point did it adhere to the Diamond versus Deere standard that requires that you look at the claims as a whole. Let's set that aside for now. What the district court then did is it said, okay, each element, if we take it in isolation, it said, is that known or generic? Now, first of all, that is not the legal standard. The legal standard, and this was reiterated by this court in Berkheimer, is whether or not under Step 2 a limitation is well understood, routine, and, and I'm stressing the and, conventional. And this court went on to specifically hold that just because an element may be present in a piece of prior art, that's not enough. That doesn't meet the threshold standard for under Step 2. The district court never even applied that correct legal standard. Instead, what the district court did is it just said, well, either based on defendant or appellee's argument, or based upon what the district court, I guess, is coming into with its own body of knowledge, is a limitation known or generic? And if the district court answered that question in the affirmative, that was enough. And I respectfully submit that is insufficient under Step 2. To meet the defendant's burden. Haven't we, in pre-Berkheimer cases, frequently referred to the fact that this is nothing more than a generic computer end of story? Yes. Meaning what, I'm sorry, Your Honor? Our court has concluded that that determination by the district court or whatever, that all it recites is a generic computer, is sufficient to establish that there's no inventive concept in Step 2. We've said that repeatedly, haven't we? So your notion now that maybe Berkheimer changed that and requires a lot more in something different, kind of hard to accept, right? I would agree with you, Your Honor, if what the district court did is it said, here's an abstract idea, and all you all did is you implemented it on a generic computer. I respectfully don't think that's what the district court's holding was. The district court, with a number of the limitations, found that they were just known in the art. They didn't even, generic wasn't part of it. An example would be the device identifier based on sampling physical parameters, which is in both independent claims. Well, I guess your point is, and it kind of gets to what Judge Toronto referred to, which is like, it's drilling down on who has the burden and the burden of what. But if you look at, for example, you referred us to paragraph 15 in accepting some burden on your part, and the specificity of that is you just say the claims were innovative and novel. Why just taking that? Is that sufficient? Isn't that just textbook classic conclusory for our purposes? I don't think it's textbook classic, and I think when you take 15, 16, 17, 18, 19, 20, and I'm reading from APPX 104 to 105, when you look at all of those together, I think that that meets the threshold of certainly creating a factual issue as to whether or not the claims are eligible. And my point is, Your Honor, is a little bit different. My point is that the district court, first of all, just completely ignored what was in the complaint. But setting that aside, the district court then went and essentially filled all of the gaps in the appellee's burden. They bear the burden, and this court has held specifically there must be evidence to support that. The district court didn't require evidence and just said, you know what, there's all these gaps, but that's okay. I'm just going to fill it with my own knowledge. Well, that's improper under binding precedent, this court's own precedent, and that of the Supreme Court as well. We're into your rebuttal. Thank you. Good morning. May it please the Court, Dan Bagatelle on behalf of the appellees with me are my colleagues Daniel Shabody and Andrew Dufresne. The district court correctly held that the claims are invalid under the two-part ALICE test. Starting with step one, the claims are directed to adjusting the terms of a license over time. I think it's a semantic debate over whether you were referring to the license itself or to adjusting the license over time. From the specification, from the claim language, all the way through, it's clear that that is the central idea of this patent. And that is an abstract idea with all the hallmarks that this court has discussed in its cases. It involves legal and economic relations. Nothing is done in the physical world. You're simply grabbing some data, checking to see whether the device has been approved before, and then perhaps adjusting the device limit from five to seven. Nothing occurs in the real world. There's no technical improvement. There's no solution to a technical problem. It is a business problem that people buy more devices and they need to adjust the device limit over time to reflect the fact that people are buying more devices. That is not a technical problem. You're using a generic computer to do what computers always do. They acquire data and they manipulate data. So is it your view that anything that's manipulating legal obligations or managing a business arrangement is per se an abstract idea? I think if you were solving a business problem with a generic computer as you are here, that's straight out. I'm just trying to figure out is that where our case law currently is. No, I think if you have that's step two. I think the Supreme Court did hold that you don't rule out business ideas per se, but you need to go beyond that to have a patent eligible solution, and we don't go beyond that here. There's no new hardware here. There's no new software here. There's no new interface. There's no new database. It's basically just taking the idea of adjusting the terms of a license over time and applying that with software. There's really nothing more than that. It is not a technical solution, and there's really no inventive step at step two. We had some discussion about whether the complaint alleges that under Atrix, and I'm happy to walk through paragraphs 13 through 21. But Judge Gross was exactly right. Chief Judge Gross was exactly right. These are conclusory allegations, and they primarily are legal argument of the lawyers regarding whether this is going to a technical invention. The closest they get is in paragraph 17, which says that certain claims require a specific configuration of modules. Basically, you've got a processor module, a memory module, a communication module. Well, that's pretty much every computer out there. There's nothing more specific than that. The combination, at best what they have is that combination applies the inventive concept of adjusting the terms of a license over time. There's nothing substantially more than that. Well, what about claim 21? Claim 21? Claim 21 is cryptographic hash. Yes. How are we to know that that is not routine, conventional, well understood? Okay. Let me start with the fact that they didn't raise that in the district court. This is an issue that they've raised newly on appeal. Second of all, a cryptographic hash is simply a combination of two different numbers. If you look at this patent, it refers back to an earlier patent by the same inventor, Richardson. It actually incorporates it bodily by reference in column four. That patent was from 1993. It refers back to an earlier patent in the 1980s, which talked about hashing numbers to uniquely identify a computer. This is all admitted prior art in this patent. It is not portrayed as an inventive concept. Do I remember right that the reference in the patent on column nine lines 28 through 31 to cryptographic hash, is that the only reference in the statute? It is. It doesn't explain anything. It sort of assumes everybody knows exactly what this is. You went exactly where I was about to go because all it's describing there is basically an enablement of that dependent claim. All you're saying is take this known idea. It doesn't proclaim it to be inventive anywhere in the patent. The only thing the patent claims as inventive is adjusting the limits over time. All this is doing is a way to identify a device. It's treated as an enablement of many different ways. You can look at the processor number. You can look at the memory configuration, all sorts of things uniquely identified. But all of those are known. They're not treated as inventive. At best, they're complementary to the main invention. But that's certainly true in Alice, too, and all of the sports cases. I'm sorry. I guess that's a judgment in the eye of the beholder, whether all these limitations are merely complementary to what is the real invention versus perhaps them actually being part of the real invention itself. That goes to what your opposing counsel was arguing that what failed to happen here was an evaluation of the claim as a whole where you consider all of the elements in combination to try to determine whether on that level, in that larger context, whether there's an inventive concept here as opposed to just studying each of the limitations in isolation. So I'd like to hear your thoughts on that. Yeah, the district court actually did. I think if you take a look at the district court's treatment of step two, he walked through each of them and also explained why the combination was not anything unusual. Basically, this patent itself in column 11 talks about you can use hardware, you can use software, you can do the steps in whatever order you want. It never claims that there's some unique combination. Anytime you're going to approve a particular device to be used, you're going to have to define what that device is. That's what Richardson's 216 patent, incorporated by reference into this patent, did back in 1993. He already taught how to do that and he incorporated it bodily into this patent. Anytime you're going to be saying that this computer or this phone can use this software, you're going to need to know whether it's this computer or this phone. That's inherent in the idea of just licensing to a particular device. The only thing this patent says is novel or inventive is adjusting the device limit over time. There's nothing unique that adjusting it over time requires you to do in terms of device identification. It's old-fashioned device identification, never treated as new in the specification, never treated as new in the complaint. Again, all they're trying to talk about here in the complaint is the idea of adjusting it over time being an improvement to computer technology and that's conclusory. Can I bring you back to the more global question we discussed with your friend, is who's got the burden to do what and at what stage? In your view, is it the burden for the patent owner to establish at the complaint stage to allege enough, plausibly, that this is not conventional, not routine, not well-known, or is this something even in the absence of specificity in the complaint they would be free to come back with in response to your motion to dismiss? I view it as analogous to Celotex. If I want to move to dismiss, I need to make some threshold showing that this complaint is Celotex in the summary judgment context, but it's analogous in the sense that if I don't move to dismiss, then perhaps the district court on its own could identify it, but then you'd have a notice, an opportunity to respond issue. But somehow it needs to be raised so that the issue is in front of the court. In that sense, we filed a motion. We identified the fact that it's defective under Section 101. We explained why all these elements were well-known in the art, and then they needed to come back and identify whatever they considered to be novel and inventive, and we can have an argument about whether that's sufficiently alleged in the complaint or in the specification. That's what I was going to ask. Is it necessary for them, is what they come back with in response to a motion to dismiss necessarily to have also been included in the complaint? Well, I think under Berkheimer, if it's in the specification itself, that's adequate. The problem here, as I said, this specification only talks about the inventive idea being adjusting the terms of a license over time. Anything else is just you need to identify the device, and whoa, here are a whole bunch of known ways of doing so. If they wanted to declare that that was something inventive, they should have said so, either in the specification or in a complaint or an amended complaint, as in Atrix. Was there a motion for amended complaint here or anything like that? No, they stood on their complaint. They also, as we discussed in our brief, did not call for additional claim construction. They conceded at the hearing that they didn't need claim construction. They said the motion is not premature, to use their language. So they had their opportunity. We explained why, even assuming their conception of what the patent was all about, it was still directed to an abstract idea. You're performing that abstract idea of adjusting the term over time on a generic computer. There's no technical invention here. There's no inventive concept that substantially alters the invention into more. That's what we need under Alice. We just don't have that here. I think your opposing counsel also mentioned that the trial court looked through the various steps of the method claim and concluded that the various steps of receiving an authorization request, checking, verifying license data, the judge found that those to all be routine steps, but didn't really point to anything to justify why those steps might be why we should all deem them to be routine. What should we do about that? I think actually he cited our brief, which in turn cited the earlier Richardson 216 patent. That's the 1993 Richardson patent that he incorporated by reference in its entirety in column four of this patent. That's part of this patent. That talks about device registration. That's how you tie a particular device to a license. He talks about using the physical parameters and other unique ways of identifying devices. That's in this patent. It's bodily incorporated. If you look at column four, you'll see that it's incorporated fully. Column four lines 43 to 49. It's also referred to in column one, description of related prior art, essentially. Patent 216 was referred to twice in there. They're basically incorporating, saying this is already known. The new wrinkle here is that we're going to adjust the term of the license over time. That is the only novel concept, and that is not something that is patent eligible under numerous cases of this court and the Supreme Court. I will just add one more point on 21, which I neglected to mention. This court in smart systems already recognized that hashing is a well-known concept. It's discussed in a footnote in the smart systems opinion. Basically, a hash is simply taking two different numbers or whatever and combining them into one. It's a mashing up of two different things. It's actually discussed extensively in the 1980s patent that's incorporated into the earlier Richardson patent. So not only has it been recognized by this court, but it's also discussed in the art that's incorporated into this patent. So hashing is not new. The Patent Board recently found some of these claims to be patentable under 102, 103? Yes, it was not the setting of the first device limit, but they said that the particular art on which we relied did not disclose adjusting to a second device limit in response to something not being on record. It was a very, very precise thing, saying you didn't exactly disclose X in response to Y. Not what was in Claim 1, not what was in Claim 19 or 21 or Claim 22 or 25, but in Claim 9, this concept of adjusting a second time. Not just the first time, but the second time also in response to it being on record. And then I guess you would necessarily say that what the Board found to be a patentable advance is itself nevertheless an abstract idea. So it fails under Section 101, even though the Patent Board found it to be okay under 102 and 103. Well, in fact, the Patent Board in the same decision had a 101 ruling in which they endorsed the district court's analysis of the Section 101 issue. But the idea of the idea or insight or technique, I don't know what the right word is to say, but of moving to a second upper limit from an initial first upper limit is itself an abstract idea. Well, that is certainly. If you're going to do it once, you're going to do it twice. I don't think that's fairly characterized as an inventive concept to say that you're going to adjust the device limit once, and then once you hit that limit, not just going to move to 5 to 7, but after a month, we're going to be able to move to 7 to 11. I don't think that's ever been alleged to be an inventive concept, and I think the idea of adjusting twice is just adding an abstract idea to an abstract idea. And we know from Recognicorp that that doesn't equal more than an abstract idea. Your Honors, Judge Prost, I'd like to start with what we've been talking about with the pleadings and the standards. It still remains in federal court, although it's getting whittled away, that notice pleading is still the standard versus detailed factual pleading. I know you have Iqbal and Twombly, which altered the old standard under Form 18, et cetera. But what I'd like to bring to the Court's attention is the apologies brought their motion not challenging the sufficiency of the pleading. The apologies didn't say, hey, look at these paragraphs here, and that's not a good enough factual allegation. That wasn't the basis of the argument, and that wasn't the basis of the district court's decision. And so essentially, the panel is making some new arguments for the apologies. The argument that was raised by apologies was just under 101, the two-test part test in ALICE, that wasn't met. And circling back to step one, our contention is that when you look at the claim as a whole, you have specific steps that are articulated to achieve a desired result. The preamble of every independent claim sets forth what the result is that we're trying to get at, adjusting a license over time. I submit, like in Fingen, for example, the result wasn't even clear. The court had to go through and figure out what result they were trying to get at. Here, we lay it out. Here's the result. And then we go through in detailed fashion, step by step, here is a way to achieve that result. Now, my opposing counsel submitted to this court that all these claims do is they say take a time-adjustable license and implement it on a generic computer. I respectfully disagree. There are a whole lot of ways you could implement a time-adjustable license, whatever that concept that the district court invented, essentially, that verbiage, whatever that means. There's a lot of ways that you can adjust a license over time on a computer. What the claims in the 960 patent set forth is a very specific way of doing so. And that's why, in accordance with Fingen and Core Wireless and other decisions by this court, I submit that under Step 1, they are directed to eligible subject matter. It's the specificity to achieve a result that gets you there, as opposed to simply saying, either here's a result that we want to get at, do it on a generic computer, or here's an abstract idea, go do it on a generic computer. We don't do that. So how would you articulate the inventive concept here? I think the inventive concept. Claim 22, for example. What's the inventive concept? I think the inventive concept is the claim when taken as a whole and the specific steps that you walk through. So, like, if you take Claim 22, for example, it's very specific in the steps that you have to walk through. I know you've said a number of times that it's very specific, but I'd just like you to just roll it up for me and tell me what is the inventive concept. What is the inventor's contribution to the useful arts in Claim 22? The inventor's contribution to the useful arts in Claim 22 is the specific steps that he sets forth. I can read them. No, that's okay. It's going to take a little while. But the specific steps that he sets forth in order to adjust a license over time, which would be the result that we're trying to achieve. And if we go back to, for example, FinGen, right? In the FinGen case, the language was, I apologize, I have it right here, receiving a downloadable, which was just a file, okay, generating a first downloadable security profile that identifies suspicious code, and then linking by the inspector the downloadable security profile. And what was found to be inventive was generating a security profile. Although the claim itself doesn't even instruct really how to do so. It just says we're going to generate it. Well, I think that our claims actually put forth more than that. We put forth more specificity in the 960 patent claims, and then when we get into the dependent claims, we take it even further, and there's more specificity that's provided. And so I submit that it's the specificity in the actual organization and the steps that you go through to achieve the result that renders it inventive. What I'd just like to leave the court with is, if we're going to be endorsing the framework that the district court applied here, essentially what we're saying is that we can ignore what's in a complaint, it doesn't matter because we don't even need to consider it, because the district court did not consider the allegations in the complaint. I understand this court believes them to be conclusory, but the district court didn't even say they're conclusory. It just ignored them completely, okay? That's not proper. Setting that aside, though, it's not appropriate for a district court to just summarily say that an element is either known or generic. With respect to the Richardson patent prior art, this court has held very specifically, just showing that something is in a piece of prior art, that's not enough. That doesn't meet the defendant's burden. And so I respectfully submit that the district court applied an incorrect standard, and as such, its findings should be reversed. Thank you. Thank you, counsel.